UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ESTATE OF RICHARD McNAMARA, III, Deceased, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:19-cv-109 ) ) |
| JOSE NAVAR and RTR FARMING CORP., | ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Protective Order [DE 23] filed by the defendants, Jose Navar and RTR Farming Corp., on March 9, 2020, and the Motion for Sanctions and Attorney Fees Pursuant to F.R.C.P. 11 and 37 [DE 26] filed by the plaintiff, Estate of Richard McNamara, III, on March 31, 2020. For the following reasons, the Motion for Protective Order [DE 23] is **GRANTED**, and the Motion for Sanctions and Attorney Fees Pursuant to F.R.C.P. 11 and 37 [DE 26] is **DENIED.**

*Background*

The plaintiff, Estate of Richard McNamara, III, initiated this wrongful death action against the defendants, Jose Navar and RTR Farming Corp., on March 22, 2019. Navar was a semi-truck driver employed by RTR Farming. The plaintiff has alleged that Navar, acting within the scope and course of his employment, drove in a negligent and reckless manner causing a collision with the decedent, Richard McNamara, III, near mile-marker 72 on eastbound I-80 of the Indiana Toll Road. McNamara died as a result of the collision with Navar. The defendants contend that the plaintiff's claimed damages and injuries resulted in whole or in part from McNamara's own negligence.

The defendants have requested the court to enter a protective order prohibiting the plaintiff's counsel from posing "Reptile Theory" questions, i.e., questions about the existence of and purpose for alleged "safety rules," during the deposition examination of the defendants. The plaintiff filed a response in opposition on March 19, 2020, and the defendants filed a reply on March 26, 2020. The parties currently are in the deposition phase of discovery.

The plaintiff has filed a motion requesting sanctions and attorney fees under Federal Rules of Civil Procedure 11 and 37. The plaintiff asserts that the defendants filed the motion for protective order without any justification or legal basis in an attempt to obfuscate the discovery process. The defendants filed a response in opposition on April 6, 2020. The plaintiff did not file a reply, and the time to do so has passed.

*Discussion*

Motions for protective orders are governed by Federal Rule of Civil Procedure 26(c), which provides, in pertinent part, that "[a] party or person from whom discovery is sought may move for a protective order" and that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." **Federal Rule of Civil Procedure 26(c)(1).** Potential limits to discovery that the court may order include specifying the terms of discovery, forbidding inquiry into certain matters, and limiting the scope of discovery. *See* **Rule 26(c)(1).** The burden is on the party seeking the protective order to demonstrate that good cause exists for the entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." ***Gulf Oil Co. v. Bernard,*** 452 U.S. 89, 102 n. 16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." ***Seattle Times Co. v. Rhinehart***, 467

U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984).

**Federal Rule of Civil Procedure 26(b)(1)** allows discovery on any "nonprivileged matter that is relevant to any party's claim or defense proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "Because the purpose of discovery is to help define and clarify the issues," courts broadly define the scope of relevant discovery. ***Doe v. Loyola Univ. Chi.***, 2020 WL 406771, at *2–3 (N.D. Ill. Jan. 24, 2020) (citation omitted) (internal quotation marks omitted).

The defendants claim that in past trucking-related-injury litigation cases with plaintiff's counsel the deposition examination of defendant drivers has included "Reptile Theory" questioning. According to the defendants' briefing, "Reptile Theory" as a litigation theory relies on two basic principles: (1) "[t]he Reptile is about community (and thus her own) safety[,]" and (2) "the courtroom is a safety arena." *See* (DE 23, p. 4); *David Ball & Don Keenan,* REPTILE: THE 2009 MANUAL OF THE PLAINTIFF'S REVOLUTION, at 27 (1st ed. 2009). Reptile-trained attorneys thus look for ways to attempt to communicate to juries that "safety" is "the purpose of the civil justice system," and that "fair compensation can diminish . . . danger within the community." REPTILE: THE 2009 MANUAL OF THE PLAINTIFF'S REVOLUTION, at 29, 30. The defining purpose behind Reptile tactics, therefore, is to "give jurors [a] personal reason to want to see causation and dollar amount come out justly, because a defense verdict will further imperil them. Only a verdict your way can make them safer." REPTILE: THE 2009 MANUAL OF THE PLAINTIFF'S REVOLUTION, at 39.

The defendants anticipate that plaintiff's counsel will include significant questioning, including hypotheticals, regarding Navar's knowledge of and the purpose underlying various purported "safety rules" for tractor-trailer operation.  The defendants have argued that "Reptile Theory" questioning will create confusion around the defendants' applicable duty of care by attempting to replace it with safety rules.  Therefore, the defendants request that the court issue a protective order prohibiting plaintiff's counsel from engaging in such questioning because it lacks any tangible connection to the scope of permissible discovery.

The plaintiff has indicated that "questions regarding safety . . . are certainly permissible questions during a discovery deposition," and "questions along this line of safety could reasonably yield discoverable information."  (DE 24, p. 4).  However, these conclusory assertions do not indicate what admissible evidence the plaintiff seeks to discover through this line of questioning.  The plaintiff has not explained how questioning Navar about the purpose for alleged safety rules is relevant to the parties' claims and/or defenses.  Additionally, the plaintiff chose not to address the specifics included in the defendants' motion, like how "Reptile Theory" questions or questions that plaintiff's counsel previously asked in a trucking-related-injury deposition, *e.g.*, "[i]f a commercial motor vehicle driver like yourself violated those rules [the Federal Motor Carrier Safety Regulations], that could endanger the public, correct," will produce discoverable information.

Navar has not been designated as an expert by the defense.  His testimony, as a lay witness, is limited to one that is rationally based on his perception, helpful to clearly understanding his testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge.  **Federal Rule of Evidence 701.**  Accordingly, asking Navar about alleged "safety rules," including generalized hypotheticals, would fall outside the

scope of permissible discovery.  The purpose of a deposition is to discover the facts. Hypothetical questions are designed to obtain opinions and are beyond the scope of the deposition of a lay witness.

Next, the plaintiff has filed a motion for sanctions and attorney fees under Federal Rules of Civil Procedure 11 and 37.  Specifically, the plaintiff has requested that the court sanction the defendants $5,000.00 to the court, $3,185.00 in attorney fees to plaintiff's counsel, and return/disgorgement of all attorney fees the defense firm, Reminger PLLC, charged to the defendants for preparing the motion for protective order, the reply brief, and the response to the instant motion.

As discussed above, the defendants have filed a motion for protective order requesting the court to prohibit plaintiff's counsel from asking "Reptile Theory" questions, i.e., questions about the existence of and purpose for alleged "safety rules," during the deposition of the defendants.  Plaintiff's counsel sent a "safe harbor" warning letter under Federal Rule of Civil Procedure 11(c)(2) permitting the defendants 21 days to withdraw the motion for protective order.  The plaintiff represents that counsel for the parties conducted in-person and telephonic discussions regarding the defendants' motion for protective order.

**Federal Rule of Civil Procedure 11** provides that attorneys and parties that present pleadings to the court for improper purposes, based on frivolous arguments, or arguments that lack evidentiary support, can be sanctioned through both monetary and nonmonetary directives. Rule 11 explicitly notes that it does not apply to any discovery matters under Rules 26 through Rule 37.  *See* **Federal Rule of Civil Procedure 11(d).  Rule 11(d)** provides, "INAPPLICABILITY TO DISCOVERY.  This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."  The accompanying

5

advisory committee note specifically states that Rule 37 sanctions are distinct:

> Rules 26(g) and 37 establish certification standards and sanctions that apply to discovery disclosures, requests, responses, objections, and motions.  It is appropriate that Rules 26 through 37, which are specially designed for the discovery process, govern such documents and conduct rather than the more general provisions of Rule 11.  Subdivision (d) has been added to accomplish this result.

**Federal Rule of Civil Procedure 11(d)** advisory committee's note to 1993 amendment.

The defendants' motion for protective order requested relief "pursuant to Fed. R. Civ. P. 26(c)."  It is clear that sanctions under Rule 11 are not implicated.  Rule 11 regards an attorney's certification that filings with the court are frivolous, and "specifically exempts application of the rule to conduct arising under the discovery provisions of Rules 26 through 37."  *See* ***Talevski v. Carter***, 2007 WL 1797634, at *8 (N.D. Ind. 2007).  Accordingly, the plaintiff's request for sanctions under Rule 11 is denied.

Alternatively, the plaintiff has requested attorney fees under Federal Rule of Civil Procedure 37.  **Federal Rule of Civil Procedure 26(c)(3)** provides that the provisions of Rule 37(a)(5) regarding awards of expenses apply to motions for protective orders under Rule 26(c).  Where, as is the case here, the motion for protective order is granted, **Rule 37(a)(5)(A)** applies, which "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Because the court has granted the motion for the protective order, the plaintiff's request for attorney fees under Rule 37 is denied.

Based on the foregoing reasons, the Motion for Protective Order [DE 23] is **GRANTED**, and the Motion for Sanctions and Attorney Fees Pursuant to F.R.C.P. 11 and 37 [DE 26] is **DENIED.**

ENTERED this 22nd day of April, 2020.

/s/ Andrew P. Rodovich
United States Magistrate Judge